# BRACEWELL

May 6, 2024

**BY ECF**

The Honorable Zahid N. Quraishi
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:     *Atlantic Coast Life Ins. Co., et al. v. A.M. Best Rating Services, Inc.,*
        Civil Action No. 3:24-cv-05470-ZNQ-RLS

Your Honor:

On behalf of our client, Defendant A.M. Best Rating Services, Inc. ("AM Best"), we respectfully request to bring to your attention two late-breaking developments in the above-captioned dispute, which are relevant to Plaintiffs' pending Motion for an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction and Request for Expedited Discovery, Dkt. No. 5 ("Motion"), and which further demonstrate that a quick ruling denying the Motion is essential.

First, as the Court is aware, Plaintiffs ACAP seek an order of this Court prohibiting AM Best from publishing an update to its Financial Strength Rating as to the Plaintiffs. AM Best adopted the updated rating on April 22, 2024, but Plaintiffs sought injunctive relief from this Court before AM Best could publish the rating update. Plaintiffs argue that they would be subject to irreparable harm if the B- Financial Strength Rating became known to the market. On May 4, 2024, presumably based on Plaintiffs' own publicly-filed complaint, the Financial Times published a story titled "Insurers sue rating agency over exposure to Everton bidder 777," which repeats ACAP's allegation that AM Best's "planned downgrade would have taken [ACAP's] financial strength rating down three notches, from B++ to B-."[1] Therefore, the rating at issue has been disseminated without any action by AM Best. This moots Plaintiffs' motion. *See, e.g.*, *Scattergood v. Perelman*, 945 F.2d 618, 621 (3d Cir. 1990) ("The merger has taken place, and this court has held on numerous occasions that when the event sought to be enjoined in a preliminary injunction has occurred, an appeal from the order denying the preliminary injunction is moot.").

Second, Plaintiffs' reply brief attached two declarations that purport to respond to AM Best's arguments in opposition to the Motion and to bolster Plaintiffs' arguments as to irreparable harm, including one from Kenneth King, the chairman and CEO of ACAP. Mr. King's declaration argues, among other things, that assets held by ACAP's reinsurer 777 Re, which were subject to recapture by ACAP, "have some value" and

---

[1] A copy of the Financial Times article is attached as Exhibit A to this letter.

**Rita K. Maxwell**
Senior Counsel

T: +1.212.508.6129        F: +1.800.404.3970
1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100
rita.maxwell@bracewell.com        bracewell.com

# BRACEWELL

The Honorable Zahid N. Quraishi
May 6, 2024
Page 2

should have been credited in AM Best's calculation as to ACAP's ability to pay annuity holders (a numerical component of which is referred to as the "BCAR score"). 777 Re is a subsidiary of 777 Partners. Mr. King specifically identified interests in professional soccer teams and aircrafts as purportedly "valuable" assets that Plaintiffs could rely on to pay claims. *See* Dkt. No. 21-1, King Decl. ¶¶ 43–44, 46. Given the urgency of the issues in this lawsuit, AM Best does not seek a surreply to address Plaintiffs' new evidence on these points. However, we wish to make the Court aware of *Leadenhall Capital Partners LLP, et al. v. Wander, et al.*, No. 1:24-cv-03453, a RICO lawsuit filed on May 3, 2024 in the Southern District of New York by creditors of 777 Partners against Mr. King individually, ACAP, 777 Partners and its two principals, and others.[2] The *Leadenhall* plaintiffs make a number of serious allegations, including:

- That Mr. King, together with the two principals of 777 Partners, engaged in a "years-long pattern of fraud perpetrated on the lenders of hundreds of millions of dollars of debt" and that King and ACAP control 777 Partners (*Leadenhall* Compl. ¶¶ 1, 12–16, 20, 139–40, 174–77, 192);

- That the very same sports teams assets that Mr. King argues "have some value" when it comes to paying ACAP's annuities are the object of the alleged fraudulent scheme, are overloaded with debt, and are subject to competing claims by 777 Partners' creditors (*id.* ¶¶ 17–18, 93, 111–19, 189, 192);[3]

- That 777 Partners aviation assets (presumably the same assets cited by Mr. King) are the subject of multiple lawsuits (*id.* ¶ 210);

- That under the reinsurance arrangements between ACAP and 777 Re, a 777 Partners-affiliated asset manager invested "approximately $2.2 billion of ACAP affiliated insurance assets—largely in risky 777 Partners-related ventures—which are supposed to be used to back claims to policyholders" and that 777 Re used reinsurance reserves comprised of ACAP policyholder premium payments to make loans to 777 Partners, which in turn "used those funds to make speculative bets on payday lenders, ultra-low-cost Canadian airlines, and football clubs such as the Everton Football Club" (*id.* ¶ 152–53). Again, these are the same assets that Mr. King argues should have been credited by AM Best for purposes of paying annuity holders.

AM Best is not a party to the *Leadenhall* lawsuit, is not privy to all of the facts, and does not ask this Court to make a determination as to what the outcome of that separate lawsuit will be. However, the allegations in the *Leadenhall* complaint, which in many places invokes documentary evidence, recorded calls, and anonymous tipsters from within 777 Partners, make clear that ACAP's financial situation is in serious question. The landscape is moving quickly, and the market deserves and needs to know AM Best's current evaluation as to ACAP's creditworthiness and ability to pay claims. For so long as Plaintiffs' Motion

---

[2] The *Leadenhall* complaint is attached as Exhibit B to this letter.

[3] For example, one asset that Mr. King claims "has some value" with respect to ACAP's ability to pay insurance or annuity claims is the Genoa FC football club. King Decl. ¶ 43. The *Leadenhall* complaint alleges that 777 Partners principal Josh Wander purchased Genoa FC as a "distressed asset" for the sum of one Euro, as part of a larger pattern in which Wander "takes on all of the club's liabilities and debt payments, and then either stiffs the clubs' creditors entirely or seeks to restructure the debt." *Leadenhall* Compl. ¶¶ 186–89.

# BRACEWELL

The Honorable Zahid N. Quraishi
May 6, 2024
Page 3

remains pending, Plaintiffs have a *de facto* TRO and AM Best is unable to remove its out-of-date rating and publish a current rating as to ACAP.  AM Best respectfully requests the Court to swiftly deny Plaintiffs' Motion so that AM Best may release the rating.

Respectfully,

*Rita K. Maxwell*

Rita K. Maxwell (NJ Attorney ID  043422010)
Britt Cass Steckman (*pro hac vice*)
Patrick J. Morley (*pro hac vice*)
**Counsel for Defendant**
**A.M. Best Rating Services, Inc.**

cc (via ECF):
        All Counsel of Record