

**WALSH**
PIZZI
O'REILLY
FALANGA

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102

T: 973.757.1100
F: 973.757.1090

WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1101
lwalsh@walsh.law

June 12, 2024

**VIA CM/ECF**
Hon. Rukhsanah L. Singh, U.S.M.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

    **Re:**    ***Atlantic Coast Life Ins. Co., et al. v. A.M. Best Rating Servs., Inc.*,**
            **Civ. A. No. 3:24-cv-05470 (ZNQ)(RLS)**

Dear Judge Singh:

    This firm, together with MoloLamken LLP, represents Plaintiffs in this action.  We write concerning the parties' discovery dispute over Plaintiffs' designation of a Rule 30(b)(6) topic for Defendant A.M. Best Rating Services, Inc.'s corporate representative.  The parties submit this letter in compliance with Your Honor's Individual Rule 6.

**PLAINTIFFS' POSITION**

    Plaintiffs served A.M. Best with a notice for a Rule 30(b)(6) deposition.  *See* Exhibit A.  On June 6, A.M. Best served responses and objections, including to Topic 8, which as relevant here seeks testimony from A.M. Best's corporate representative on A.M. Best's "income from . . . [its] ratings services."  Exhibit B at 7.[1]   A.M. Best objected that the topic was irrelevant and called for "sensitive" information, among other objections.  *Id.*   The parties attempted but were

---

[1] The parties narrowed their dispute to this aspect of Topic 8 after A.M. Best agreed to produce a witness to testify on the extent to which A.M. Best uses its credit ratings as or in conjunction with advertising.  Exhibit C at 4.

Hon. Rukhsanah L. Singh, U.S.M.J.
June 12, 2024
Page 2

unable to resolve the dispute after meeting and conferring by phone and email.  *See* Exhibit C. Plaintiffs now seek to compel A.M. Best to designate a corporate representative to offer testimony on the last three years of A.M. Best's gross revenues and profits from its ratings services or, in the alternative, to produce financial statements reflecting that information.

The testimony should be compelled.  A.M. Best's income from ratings services is plainly relevant to A.M. Best's First Amendment defense.  *See Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 393 (D.N.J. 2011) (Rule 30(b)(6) topics permitted when relevant under Fed. R. Civ. P. 26(b)(1)).  That defense turns in significant part on whether the speech here – the rating – is "commercial."  And whether A.M. Best's motivations for the rating are "economic" is undeniably relevant to that issue.  *See* D.E. 42 at 9-11 (Plaintiffs' reply to A.M. Best's First Amendment argument); *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020) (whether speech is commercial depends on speaker's "economic motivation"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 793 (3d Cir. 1999) (similar).  Indeed, it is common sense that how much a company earns from speech is relevant to what motivates the speech.  *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516-17 (7th Cir. 2014) (whether speech is commercial is a "common-sense" inquiry).  Testimony about income also poses no burden or proportionality concerns.  It is tailored to an issue that will be central to the preliminary injunction hearing.  And Defendant's representative just needs to look at A.M. Best's financials and be prepared to testify to a few top- and bottom-line numbers.  Plaintiffs have thus offered to forgo income testimony if A.M. Best produces financial statements.  Exhibit C at 4, 6.  A.M. Best has declined.  *Id.* at 4.

A.M. Best's arguments against producing this basic information are meritless.  A.M. Best first urges that its income information is "sensitive" or confidential.  Exhibit C at 2, 4.  The

Hon. Rukhsanah L. Singh, U.S.M.J.
June 12, 2024
Page 3

stipulated confidentiality order eliminates that concern.  *See* D.E. 53.  And confidentiality alone is "not a legitimate basis to deny relevant discovery." *Justiano v. G4S Secure Sols., Inc.*, 291 F.R.D. 80, 84 n.3 (D.N.J. 2013).

A.M. Best also argues that the "details" of its income are irrelevant, and that a stipulation that it "charges fees for, and earns income from, credit ratings" would suffice.  Exhibit C at 2, 4, 8.  But Plaintiffs cannot be forced to stipulate away their right to details that are relevant to ***why and how much*** A.M. Best is motivated by economics.  *See Old Chief v. United States*, 519 U.S. 172, 183, 186-88 (1997) (overturning exclusion of evidence and forced stipulation based on narrative relevance).  If A.M. Best insists that its ratings are non-commercial speech – despite the obvious fact that A.M. Best sells those ratings for profit – it cannot also dictate what proof Plaintiffs may use to disprove A.M. Best's position.  And details about A.M. Best's ratings income are especially critical here because A.M. Best has argued it has non-economic motivations for its speech, including its putative desire "to protect the public."  D.E. 44 at 15.  Plaintiffs are entitled to test that contention with details about how strong Defendant's economic motivations are.  Defendant's response is to argue the merits of its First Amendment theories, but that does not disprove relevance.  If anything, it proves it.

Accordingly, Plaintiffs respectfully request that A.M. Best be compelled to offer testimony or documents reflecting the last three years of gross revenues and profits from its ratings.

### DEFENDANT'S POSITION

AM Best's financial records are not relevant to this case, and certainly not pertinent to the early discovery necessary for the upcoming preliminary injunction hearing.[2]  "[C]ourts only grant

---

[2] To be clear, AM Best's objection to this discovery is predicated on relevancy, not confidentiality, as Plaintiffs suggest.

Hon. Rukhsanah L. Singh, U.S.M.J.
June 12, 2024
Page 4

this type of discovery [into a party's financial information] in unique situations." *Mack Boring &*

*Parts Co. v. Novis Marine, Ltd.*, 2008 WL 5136955, at *3 (D.N.J. Dec. 5, 2008) (denying motion

to compel financial information as not relevant). No such circumstances are present here.

Notably, Plaintiffs do not assert that AM Best's financial information is relevant in any

way to their breach of contract claims, which arise from AM Best's credit ratings as to Plaintiffs.

Rather, they argue AM Best's financial information is somehow implicated by AM Best's

argument that it has a First Amendment interest in publishing the credit rating at issue.

Plaintiffs' motion rests on a fallacy – the notion that the mere fact that a publisher earns

income from its publications means that those publications are "commercial speech" entitled to a

lower level of protection under the First Amendment. That definition would exclude virtually all

publishers from protection under the First Amendment, and none of Plaintiffs' cited cases even

remotely support it. Nor do any of Plaintiffs' cited cases suggest that a publisher's financial records

are relevant to a determination of whether the publisher has an "economic motive" for its speech.

*See Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020)

(speech "pertaining to a possible offer of employment" is commercial); *In re Orthopedic Bone*

*Screw Prods. Liability Litig.*, 193 F.3d 781 (3d Cir. 1999) (considering application of First

Amendment to speakers at seminars regarding medical devices); *Jordan v. Jewel Food Stores,*

*Inc.*, 743 F.3d 509, 516–17 (7th Cir. 2014) (advertisement for grocery store chain).

There is no dispute that AM Best is in the business of publishing credit ratings as to the

financial strength and creditworthiness of insurance companies.[3] There is also no dispute that

---

[3] AM Best also issues other publications containing commentary, research, and analysis as a way of providing additional insight into each credit rating, key segments of the insurance marketplace, and trends across the industry. *See* Dkt. No. 44, AM Best Opp. to Mot. for TRO/PI at 3. AM Best has designated a corporate witness to testify regarding AM Best's status as a "publisher." *See* Ex.

Hon. Rukhsanah L. Singh, U.S.M.J.
June 12, 2024
Page 5

individuals considering purchasing insurance, insurance brokers, financial advisors, and others in the insurance market rely on AM Best's ratings, including the ratings at issue here, in making decisions to purchase insurance products, like the annuities that Plaintiffs market and sell to retirees, in part on the strength of their AM Best credit rating. Dkt. No 44-1, Porcelli Decl. ¶¶ 12, 36–37; Dkt. No. 42-1, King Decl. ¶¶ 5–6 ("[B]rokers heavily rely on credit ratings, and particularly ratings from A.M. Best, when determining what products to offer existing or potential policy holders."). Credit rating agencies are publishers, and their credit ratings are protected by the First Amendment. *See, e.g.*, *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 522, 531 (6th Cir. 2007); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 855–56 (10th Cir. 1999). Plaintiffs' argument that there is no public interest in AM Best's credit ratings is therefore without merit.

Further, even assuming for the sake of argument that the information is relevant, AM Best has offered to stipulate that it earns income from issuing credit ratings. There is no dispute as to that fact, and nothing for Plaintiffs to "test." Plaintiffs have failed to establish that the specific details of AM Best's financial information would move the needle in any way on their argument. Courts deny motions to compel sensitive financial information where the "the relevant information is available via other less invasive reliable sources." *Robinson v. Horizon Blue Cross-Blue Shield of New Jersey*, 2013 WL 6858956, at *3 (D.N.J. Dec. 23, 2013) (denying motion to compel tax returns where plaintiff was willing to stipulate to relevant facts); *see also Mitchell-Proffitt Company v. Eagle Crest, Inc.*, 2005 WL 8159669, at *3 (M.D. Fla. Feb. 9, 2005) (finding financial

---

at 6–7 (Response to Topic 7). As a result, Plaintiffs' suggestion that only top-line revenue is relevant sets up a false scenario, as detailed financial information would have to be provided and parsed.  This is a breach of contract case, not one where AM Best's financials are at issue.

Hon. Rukhsanah L. Singh, U.S.M.J.
June 12, 2024
Page 6

information sought could be "more appropriately obtained" from other sources). "While the scope of discovery in federal litigation is broad, the court has a responsibility to protect privacy and confidentiality interests." *LifeScan, Inc. v. Smith*, 2023 WL 7087262, at *7 (D.N.J. Mar. 7, 2023) (granting motion to quash third-party subpoena seeking financial information on the grounds that the information sought was not relevant and therefore not discoverable under Rule 26(b)(1)).

*     *     *

Plaintiffs thank the Court for its attention to this matter and are available should Your Honor or Your Honor's staff have any questions or require anything further.

Respectfully submitted,

*s/Liza M. Walsh*

Liza M. Walsh

w/ enclosures

cc:     Honorable Zahid N. Quraishi, U.S.D.J.
        All counsel of record (via ECF & Email)

# EXHIBIT A

Liza M. Walsh
Joseph L. Linares
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ  07102
Tel.: (973) 757-1100
lwalsh@walsh.law
jlinares@walsh.law

Steven F. Molo (admitted *pro hac vice*)
Justin Ellis (admitted *pro hac vice*)
Josh Bloom (admitted *pro hac vice*)
Mark Kelley (admitted *pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
smolo@mololamken.com
jellis@mololamken.com
jbloom@mololamken.com
mkelley@mololamken.com

Jennifer Fischell (admitted *pro hac vice*)
Lois Ahn (admitted *pro hac vice*)*
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Tel.: (202) 556-2007
jfischell@mololamken.com
lahn@mololamken.com

*Admitted only in New York; practice limited
to matters before federal courts and federal
agencies*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JESERY

| | |
|---|---|
| ATLANTIC COAST LIFE INSURANCE COMPANY and SENTINEL SECURITY LIFE INSURANCE COMPANY, | Civil Action No. 3:24-cv-05470-ZNQ-RLS |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF TAKING RULE 30(b)(6) DEPOSITION** |
| v. | |
| A.M. BEST RATING SERVICES, INC., | |
| Defendant. | |

**<u>NOTICE OF TAKING RULE 30(b)(6) DEPOSITION</u>**

PLEASE TAKE NOTICE THAT pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiffs Atlantic Coast Life Insurance Company ("Atlantic Coast") and Sentinel Security Life Insurance Company ("Sentinel," and, together with Atlantic Coast, "the A-CAP Insurers"), by and through their undersigned attorneys, will take the deposition of a corporate representative of Defendant A.M. Best Rating Services, Inc. ("A.M. Best"), at the offices of Walsh Pizzi O'Reilly Falanga LLP, 100 Mulberry Street, 15th Floor Newark, NJ 07102, at such time to be agreed upon no later than May 21, 2024.  The deposition will be taken before a notary public or other officer authorized to administer oaths and shall be recorded by audiovisual and stenographic means.  The matters designated for testimony are set forth in Attachment A hereto.

Dated:  June 4, 2024

*/s/ Justin M. Ellis*
Justin M. Ellis

2

## ATTACHMENT A

### DEFINITIONS

1. The terms "You," "Your," and "A.M. Best" mean A.M. Best Rating Services, Inc. and any and all persons acting or purporting to act on its behalf, including present or former entities, affiliates, officers, directors, members, employees, analysts, agents, representatives, and attorneys.

2. The term "all" means "any and all."

3. The term "any" means "any and all."

4. The terms "and" and "or" are to be construed either disjunctively or conjunctively, whichever is appropriate in each instance so as to bring within the scope of each of these Definitions and Topics of Examination any information that might otherwise be considered beyond that scope.

5. The term "communication" means any transmission of information, ideas, facts, data, proposals, or any other matter by one or more persons and/or between two or more persons by any means, including telephone conversations, letters, telegrams, teletypes, telexes, telecopies, electronic mail, text messages, instant messages or chat applications, cloud-based document management systems, other computer link-ups, written memoranda, and face-to-face conversations.

6. The term "including" means "including but not limited to."

7. The terms "related to" and "relating to" mean constituting, containing, embodying, comprising, reflecting, identifying, stating, referring to, dealing with, commenting on, responding to, describing, analyzing, or in any way pertaining to.

8. The term "777 Re" means 777 Re. Ltd., a Bermuda-based reinsurer.

9.     The term "A-CAP Insurers" means Atlantic Coast Life Insurance Company, Sentinel Security Life Insurance Company, and all persons acting on their behalf, including entities, affiliates, officers, directors, members, employees, agents, representatives, and attorneys.

10.     The term "Appeal" means the internal A.M. Best procedure requested by and granted to the A-CAP Insurers on March 27, 2024 and April 2, 2024, respectively, to appeal the Credit Rating Action.

11.     The term "BCAR" means Best Capital Adequacy Ratio.

12.     The term "Credit Rating Action" means Your proposed action to downgrade the A-CAP Insurers' Financial Strength Rating from B++ (Good) to B- (Fair), including the Appeal.

13.     The term "Global BCAR" means a BCAR that reflects the available capital and capital needs of other members of an insurer's corporate family.

14.     The term "Investment Working Group" means the AM Best Investment Working group identified in paragraph 5 of the Declaration of Michael Porcelli in Support of Opposition to Plaintiffs' Application for an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction and Request for Expedited Discovery, dated April 29, 2024.

15.     The term "Leadenhall" means Leadenhall Capital Partners LLP, Leadenhall Life Insurance Linked Investments Fund PLC, or any affiliate of those entities.

## TOPICS OF EXAMINATION

1.     The contracts between You and the A-CAP Insurers in effect during the Credit Rating Action.

2.     The Credit Rating Action, including:

   a.   Your policies and procedures applicable to the Credit Rating Action, including without limitation policies relating to capital charges for affiliates and affiliate transactions (including definitions of what constitutes an affiliate); Your code of

conduct; Global BCAR; rotation or transition of analyst teams for rated entities; Your appeal process; "under review" and or "watch" status for rated entities; and "event-driven" ratings.

b.  Your compliance with policies and procedures applicable to the Credit Ratings Action, including without limitation Your efforts to validate the ratings You determined in connection with the Credit Rating Action;

c.  The documents, information, and assumptions considered by You in the course of the Credit Ratings Action, including Your decision to consider or rely on documents, information, or assumptions in the Credit Rating Action that were provided by entities that You rate other than the A-CAP Insurers;

d.  The documents, information, and assumptions You requested or received from the A-CAP Insurers;

e.  The documents, information, and assumptions that You contend were relevant and material to the Credit Rating Action and that You contend the A-CAP Insurers did not provide to You;

f.  The timing of the Credit Ratings Action;

g.  Your rationales for the Credit Rating Action;

h.  The Appeal; and

i.  The A-CAP Insurers' request for a new analyst team in connection with the Credit Rating Action.

3.  Your practices prior to July 1, 2023 concerning credit ratings of the A-CAP Insurers, including the calculation of a Global BCAR, reliance on materials provided by the A-CAP Insurers and other third parties, and engagement with the A-CAP Insurers in advance of presenting a rating recommendation to Your rating committee.

4.    Your knowledge and understanding of 777 Re's financial condition from November 2023 to the present.

5.    Your knowledge and understanding of the financial condition of the A-CAP Insurers and their affiliates from November 2023 to the present.

6.    Your knowledge and understanding of the relationship between the A-CAP Insurers, or any of its affiliates, and 777 Re, or any of its affiliates.

7.    Your contention that You are a "publisher" or that the rating you determined in connection with the Credit Rating Action is a matter of public concern.

8.    Your business model as a ratings agency, including Your income from, reputation for, and marketing of, Your ratings services.

9.    The consequences to the A-CAP Insurers if you release the final rating you determined in connection with the Credit Rating Action.

10.    Any harm You contend has or will be caused by Your inability to release the final rating You determined in connection with the Credit Rating Action.

11.    Any communication or meeting between You, on one hand, and 777 Re, Leadenhall, or the United States Securities and Exchange Commission, on the other hand, concerning the A-CAP Insurers or their affiliates.

# EXHIBIT B

Rita K. Maxwell
**Bracewell LLP**
31 West 52nd Street, 19th Floor
New York, NY 10019
rita.maxwell@bracewell.com
(212) 508-6129

*Counsel for Defendant A.M. Best Rating Services, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC COAST LIFE INSURANCE COMPANY and SENTINEL SECURITY LIFE INSURANCE COMPANY, | Case No. 3:24-cv-05470-ZNQ-RLS |
| *Plaintiffs*, | Judge Zahid N. Quraishi<br>Magistrate Judge Rukhsanah L. Singh |
| v. | |
| A.M. BEST RATING SERVICES, INC., | |
| *Defendant*. | |

**DEFENDANT A.M. BEST'S RESPONSES AND OBJECTIONS TO**
**PLAINTIFFS' NOTICE OF TAKING RULE 30(B)(6) DEPOSITION**

Defendant A.M. Best Rating Services, Inc. ("Defendant" or "AM Best") hereby serves its Objections and Responses to Plaintiffs Atlantic Coast Life Insurance Company and Sentinel Security Life Insurance Company's ("Plaintiffs" or "the A-CAP Insurers") Notice of Taking Rule 30(b)(6) Deposition ("Notice of Deposition").

**GENERAL OBJECTIONS**

The following objections apply to Plaintiffs' Notice of Deposition, which shall apply to any and all of the individual topics that are noticed.

1.       By responding to these Notice of Deposition, AM Best does not waive any objection that may be applicable to the use, for any purpose, by Plaintiffs of any information

given in response, or the admissibility, privilege, relevancy, authenticity, or materiality of any information relating to any issue in the case. AM Best expressly reserves the right to object to the use of these responses or the subject matter contained herein during any subsequent proceeding, including the trial of this or any other action.

2.      AM Best objects to the Notice of Deposition to the extent that it seeks to obtain "corporate" testimony on factual events about which individuals are most capable of testifying, to the extent that such testimony is unreasonably cumulative or duplicative, overlapping of other topics, or obtainable from some other source that is more convenient or less burdensome.

3.      AM Best objects to the Notice of Deposition to the extent it seeks to impose obligations beyond those permitted by the Federal Rules of Civil Procedure ("FRCP") or the Local Rules of the United States District Courts for the District of New Jersey ("Local Rules").

4.      AM Best objects to the Notice of Deposition to the extent it seeks information subject to the attorney-client privilege, work-product immunity, New Jersey Shield Law, the protection afforded trial preparation materials, and/or any other privilege or protection afforded by state or federal law. AM Best will not provide information that is privileged or otherwise immune from discovery.

5.      AM Best objects to the Notice of Deposition to the extent it seeks information that is publicly available and/or equally available to Plaintiffs.

6.      AM Best objects to the Notice of Deposition to the extent that it presumes that AM Best performs certain functions, without any foundation that such function is performed.

7.      AM Best objects to the Notice of Deposition to the extent it is overly broad, vague, unduly burdensome, duplicative, not relevant to any issue in the present litigation or to a claim or defense of any party, and/or to the extent they are not reasonably calculated to lead to the

discovery of admissible evidence or are otherwise not within the scope of relevant discovery.

8.     AM Best objects to the Notice of Deposition to the extent it seeks information that is the subject of expert testimony and are, therefore, premature.

9.     AM Best objects to the Notice of Deposition to the extent it seeks information that is not within its possession, custody, or control.

10.     AM Best objects to the Notice of Deposition to the extent it seeks the confidential, proprietary and/or trade secret information of third parties.

11.     AM Best objects to the Notice of Deposition to the extent that it is overbroad, unduly burdensome, or seek information not relevant to the allegations in Plaintiffs' Complaint, not relevant to any claims or defenses by any party, and not reasonably calculated to lead to the discovery of admissible evidence.

12.     AM Best objects to Definition No. 1 of the terms "You ," "Your," and "A.M. Best"  as overly broad and unduly burdensome, and to the extent they seek information that is solely in the possession of counsel or communications that are protected by privilege.

13.     AM Best objects to Definition No. 7 of the terms "related to" and "relating to" as vague, ambiguous, overly broad and unduly burdensome.

14.     AM Best objects to Definition No. 13 of "Global BCAR" to the extent it is inconsistent with AM Best's definition, understanding, or usage of that term.

15.     AM Best incorporates by reference these General Objections into the specific objections set forth below. AM Best may repeat a General Objection for emphasis or some other reason, however, the failure to repeat any General Objection does not constitute a waiver of any sort.  Moreover, AM Best does not waive its right to amend its objections.

## OBJECTIONS TO TOPICS OF EXAMINATION

**TOPIC NO. 1:**

The contracts between You and the A-CAP Insurers in effect during the Credit Rating Action.

**RESPONSE:**

AM Best objects to this Topic to the extent it assumes any such contracts exist.

Subject to and without waiving the foregoing specific and general objections, AM Best will produce a witness on this topic.

**TOPIC NO. 2:**

The Credit Rating Action, including:

a.  Your policies and procedures applicable to the Credit Rating Action, including without limitation policies relating to capital charges for affiliates and affiliate transactions (including definitions of what constitutes an affiliate); Your code of conduct; Global BCAR; rotation or transition of analyst teams for rated entities; Your appeal process; "under review" and or "watch" status for rated entities; and "event-driven" ratings.

b.  Your compliance with policies and procedures applicable to the Credit Ratings Action, including without limitation Your efforts to validate the ratings You determined in connection with the Credit Rating Action;

c.  The documents, information, and assumptions considered by You in the course of the Credit Ratings Action, including Your decision to consider or rely on documents, information, or assumptions in the Credit Rating Action that were provided by entities that You rate other than the A-CAP Insurers;

d.  The documents, information, and assumptions You requested or received from the A-CAP Insurers;

e.  The documents, information, and assumptions that You contend were relevant and material to the Credit Rating Action and that You contend the A-CAP Insurers did not provide to You;

f.  The timing of the Credit Ratings Action;

g.  Your rationales for the Credit Rating Action;

h.  The Appeal; and

i. The A-CAP Insurers' request for a new analyst team in connection with the Credit Rating Action.

**RESPONSE:**

AM Best objects to this Topic to the extent that it is overly broad and seeks information that is not relevant or reasonably calculated to lead to discovery of admissible evidence. AM Best specifically objects to the phrase "policies and procedures" as vague and undefined. AM Best will interpret "policies and procedures" broadly to include AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies. AM Best further objects to this Interrogatory on the grounds that it misstates AM Best's policies, procedures, and methodologies and refers to certain policies, procedures, and methodologies applying to the Credit Rating Action that are not specifically applicable to the Credit Rating Action, contrary to the reference.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness or witnesses on this topic.

**TOPIC NO. 3:**

Your practices prior to July 1, 2023 concerning credit ratings of the A-CAP Insurers, including the calculation of a Global BCAR, reliance on materials provided by the A-CAP Insurers and other third parties, and engagement with the A-CAP Insurers in advance of presenting a rating recommendation to Your rating committee.

**RESPONSE:**

AM Best objects to this Topic as overly broad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of relevant information to the extent it is not limited by time. AM Best will interpret this Topic as covering the time period 2022 through July 1, 2023.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness on this topic.

**TOPIC NO. 4:**

Your knowledge and understanding of 777 Re's financial condition from November 2023 to the present.

**RESPONSE:**

AM Best objects to this Topic to the extent that it is overly broad, vague, and ambiguous. AM Best will interpret this Topic as pertaining to its knowledge and understanding of 777 Re's financial condition as it pertains to the Credit Rating Action, as defined in the Notice of Deposition.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness on this topic.

**TOPIC NO. 5:**

Your knowledge and understanding of the financial condition of the A-CAP Insurers and their

affiliates from November 2023 to the present.

**RESPONSE:**

AM Best objects to the term "their affiliates" as vague and ambiguous.  AM Best will interpret this term to include only any affiliates that AM Best reviewed in connection with the Credit Rating Action, as defined in the Notice of Deposition.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness on this topic.

**TOPIC NO. 6:**

Your knowledge and understanding of the relationship between the A-CAP Insurers, or any of its

affiliates, and 777 Re, or any of its affiliates.

**RESPONSE:**

AM Best objects to this Topic to the extent that it is overly broad, vague, and ambiguous. AM Best will  interpret this Topic as pertaining to its knowledge and understanding the relationship between the A-CAP Insurers, or any of its affiliates, and 777 Re, or any of its affiliates as it pertains to the Credit Rating Action, as defined in the Notice of Deposition.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness on this topic.

**TOPIC NO. 7:**

Your contention that You are a "publisher" or that the rating you determined in connection with

the Credit Rating Action is a matter of public concern.

**RESPONSE:**

AM Best objects to extent that this Topic calls for a legal conclusion.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness on this topic.

**TOPIC NO. 8:**

Your business model as a ratings agency, including Your income from, reputation for, and

marketing of, Your ratings services.

**RESPONSE:**

AM Best objects to this Topic as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant or reasonably calculated to lead to the discovery of relevant information.  Further, information concerning AM Best's income, in addition to being irrelevant to Plaintiffs' pending motion for injunctive relief, is sensitive information.

AM Best is willing to meet and confer on this Topic.

**TOPIC NO. 9:**

The consequences to the A-CAP Insurers if you release the final rating you determined in

connection with the Credit Rating Action.

**RESPONSE:**

AM Best objects to extent that this Topic calls for information that is within the possession of Plaintiffs, not AM Best. AM Best further objects to this Topic as overly broad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of relevant information.

AM Best is willing to meet and confer on this Topic.

**TOPIC NO. 10:**

Any harm You contend has or will be caused by Your inability to release the final rating You

determined in connection with the Credit Rating Action.

**RESPONSE:**

AM Best objects to the term "harm" as vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, AM Best will produce a witness on this topic.

**TOPIC NO. 11:**

Any communication or meeting between You, on one hand, and 777 Re, Leadenhall, or the United

States Securities and Exchange Commission, on the other hand, concerning the A-CAP Insurers

or their affiliates.

**RESPONSE:**

AM Best objects to this Topic on the grounds that it is overly broad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of relevant information.

AM Best is willing to meet and confer on this Topic.

Date:  June 6, 2024                         **BRACEWELL LLP**

*/s/ Rita K. Maxwell*
31 West 52nd Street, 19th Floor
New York, NY 10019
Tel:  (212) 508-6129
rita.maxwell@bracewell.com

Britt Cass Steckman (*pro hac vice*)
2001 M Street NW, Suite 900
Washington, D.C. 20036
Tel: (202) 828-5831
britt.steckman@bracewell.com

Patrick Morley (*pro hac vice*)
31 West 52nd Street, 19th Floor
New York, NY 10019
Tel: (212) 938-6432
patrick.morley@bracewell.com

***Counsel for Defendant***
***A.M. Best Rating Services, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2024, the foregoing document was served on all counsel via email:

Liza M. Walsh
Joseph L. Linares
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel: (973) 757-1100
lwalsh@walsh.law
jlinares@walsh.law

Steven F. Molo (*pro hac vice*)
Justin Ellis (*pro hac vice*)
Josh Bloom (*pro hac vice*)
Mark Kelley (*pro hac vice*)
**MOLOLAMKEN LLP**
430 Park Avenue, 6th Floor
New York, NY 10022
Tel: (212) 607-8170
smolo@mololamken.com
jellis@mololamken.com
jbloom@mololamken.com
mkelley@mololamken.com

Jennifer Fischell (*pro hac vice*)
Lois Ahn (*pro hac vice*)
**MOLOLMAKEN LLP**
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel: (202) 556-2007
jfischell@mololamken.com
lahn@mololamken.com

/s/ Rita K. Maxwell
Rita K. Maxwell

# EXHIBIT C

| | |
|---|---|
| **From:** | Bloom, Josh |
| **Sent:** | Sunday, June 9, 2024 11:31 PM |
| **To:** | Steckman, Britt; Maxwell, Rita; Morley, Patrick |
| **Cc:** | Joseph Linares; A-CAP ML |
| **Subject:** | RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice |

Britt,

It is clear a point-by-point refutation of your email would not be productive at this point.  Suffice it to say we disagree with you, including, but not limited to, your puzzling misunderstanding of what we do "not deny."

We will be raising 30(b)(6) Topic 8 with the Court.  However, we are interested in trying to minimize the burden on the Court given the number of discovery disputes that are, or imminently will be, before it.  To that end:

1. We are prepared to make one more attempt to resolve our dispute as to Topic 2.  We are compiling a reduced list of policies and procedures we believe Mr. Easop should be prepared to testify about.  We will send that list tomorrow morning.  If helpful, we will be available to meet and confer regarding that revised list tomorrow between 12-2pm and after 3pm.

2. Given we both will be going to the Court imminently with a discovery dispute, to reduce the volume of paper the Court needs to deal with, we would propose consolidating the parties' upcoming issues into a single joint letter.  We are happy to sort out logistics for such a letter via email, and are also available to meet and confer on that issue during the window noted above.  Please let us know if AM Best is amenable to this joint approach.

Best,
Josh

---

**From:** Steckman, Britt <britt.steckman@bracewell.com>
**Sent:** Sunday, June 9, 2024 7:53 PM
**To:** Bloom, Josh <jbloom@mololamken.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Josh:

Your email does not deny that Topic 2, as drafted, is overly broad, that AM Best objected on that basis, and that Plaintiffs' complaint is limited to discrete areas of alleged non-compliance with AM Best's policies, procedures, and methodologies. We are in an expedited discovery posture ahead of a PI hearing at which Plaintiffs must prove a likelihood of success on the theory pled, not some other theory that you have yet to articulate.   Plaintiffs are entitled only to discovery that is proportional to the current posture of the case (a Rule 26 factor that your email does not address).

That said, there must be room to compromise on Topic 2.  You are correct that Mr. Easop's department oversees the compliance policies and that he can be reasonably prepared to testify on those policies.  The compliance policies are not the problem here.  It is the suggestion that Mr. Easop (or any witness) should be prepared to address

the entirety of the multiple methodologies identified AM Best's response to Interrogatory No. 5.  Again, with respect to the methodologies, we understand Plaintiffs' complaint to raise issues only with respect to the calculation of "Global BCAR" score and the application of capital charges for affiliates.  Preparing a corporate witness on those discrete topics is manageable, and we are prepared to do it.  If you are able to point to allegations in your complaint or PI papers that justify additional topics, we can consider how best to address those as well.  But there is simply no justification for anything broader.

Regarding Topic 8, you have yet to identify any authority to support your argument that the details of AM Best's financial data are relevant to your argument (or proportional to the current posture). We cannot agree to produce data that is both irrelevant and sensitive. Protective orders are only needed to protect relevant sensitive data.  If the discovery sought is not relevant, it is not discoverable at all.

If you insist on going to the Court to argue that you should be entitled to corporate witness testimony on these issues in addition to the broad list for which we have already agreed to provide a witness, it will be your burden to prove both relevance and proportionality in light of the current expedited schedule.


**BRITT STECKMAN**
Partner
britt.steckman@bracewell.com | download v-card
T: +1.202.828.5831 | F: +1.800.404.3970 | M: +1.703.405.7192

**BRACEWELL LLP**
2001 M Street NW, Suite 900 | Washington, D.C. | 20036-3310
bracewell.com  |  profile  |  LinkedIn  |  Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Bloom, Josh <jbloom@mololamken.com>
**Sent:** Sunday, June 9, 2024 5:33 PM
**To:** Steckman, Britt <britt.steckman@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** [EXTERNAL SENDER] RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Britt,

On Topic 2, AM Best does not get to self-limit deposition topics based on its own undisclosed understanding of what is at issue.  What is, and what has always been, at issue in this case is whether AM Best complied with its policies and procedures in connection with the Credit Rating Action.  That is not limited to the few examples of non-compliance identified in the complaint.  And the topic on its face is not limited to those few examples.  If AM Best actually understood otherwise, it was incumbent on it to share that fact.

AM Best's boilerplate overbreadth objection does not satisfy that obligation.  When AM Best wanted to propose an interpretation that deviated from a topic's plain language it did so, repeatedly, ***including with respect to another part of Topic 2(a)***.  *See also* AM Best 30(b)(6) R&O's Topics 3-6.  But AM Best did not propose any alternative interpretation to "policies and procedures applicable to the Credit Rating Action, including without limitation."

That aside, as AM Best recognizes, its overbreadth objection is limited to the extent the topic seeks information that is irrelevant or not reasonably calculated to lead to the discovery of admissible evidence. What policies and procedures did or did not apply to the Credit Rating Action, and the scope and meaning of those policies, is plainly relevant to whether AM Best complied with them. And testimony on those policies and procedures is also likely to lead to the discovery of further admissible evidence. AM Best's overbreadth argument is inapplicable.

AM Best's claim of burden is also meritless. AM Best has first-hand knowledge of what policies and procedures it used to rate Plaintiffs less than two months ago. There is nothing unreasonable about expecting AM Best to be familiar with the policies and procedures that it purported to act consistently with, and which it had contractual (and regulatory) obligations to comply.

That is particularly true given the policies at issue total 339 **pages**, a perfectly reasonable figure in its own right. But even that figure is inflated. More than half of the 28 policies at issue are 3 pages or less. Indeed, 20 of the 28 policies at issue are 6 or less pages. And of the 8 policies longer than 6 pages, 2 were issued by AM Best's compliance department, the same department Mr. Easop heads and whose policies he presumably already is well acquainted with (there is also at least one policy shorter than 6 pages that was also issued by the compliance department). The length of the policies at issue is not unduly burdensome.

Moreover, it is not as if Mr. Easop needs to prepare for every topic. Of our 11 topics, AM Best has designated Mr. Easop to testify to, at most, only 3 full topics and one partial topic. But even if that wasn't the case, we have already agreed to substantially narrow numerous topics and in doing so AM Best's burden in preparing its corporate representatives. Finally, to the extent AM Best is concerned about timing it has no one to blame but itself if it delayed or narrowed preparations on this topic by making obviously incorrect and undisclosed assumptions about its scope.

If Mr. Easop cannot adequately prepare to testify about AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies identified in AM Best's interrogatory response by June 14, please provide alternative dates sufficiently in advance of the hearing when he will be able to do so. If AM Best is unable or unwilling to do so, we will consider ourselves at an impasse on this topic and seek appropriate relief from the Court on Tuesday.

On Topic 8, AM Best's claim to have compromised is, at best, overstated. Providing a witness on "the extent to which AM Best uses its credit ratings as or in conjunction with advertising," a plainly relevant issue, is something AM Best is required to do. And AM Best's proposed stipulation is an offer to provide essentially nothing at all.

Even if AM Best's proposed stipulation was sufficient, Plaintiffs cannot be forced to stipulate away helpful details of the facts they need to prove that AM Best's ratings are not protected speech. *Old Chief v. United States*, 519 U.S. 172, 186 (1997). But it is not sufficient. In fact, it's not even close. And we explained why.

AM Best has offered no substantive response. AM Best cites no authority of its own to support its position that its income and financial statements are irrelevant to its motivations when issuing ratings. Those motivations feed into a broad, "common-sense" inquiry into what sort of speech is commercial – and it is common sense that **how much** someone profits from speech affects their motivations. *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516-17 (7th Cir. 2014). The relevance is especially clear if, as we suspect, AM Best will continue to disagree that its ratings are commercial speech and/or continue to argue, as it did in opposition to our TRO motion, that it has non-economic motivations for issuing ratings. AM Best cannot explicitly put the nature of its speech at issue and then refuse to provide information plainly relevant to whether its speech is commercial.

AM Best's claim that its financial statements are "sensitive and confidential" is a non-sequitur. As we explained during the meet and confer, the agreed protective order in this case addresses any such concerns. AM Best had no response to that fact on the meet and confer. And it has no response now. It simply ignores that the protective

3

order renders this objection moot.  If AM Best is that concerned about disclosing its financial information, it can withdraw its First Amendment defense or agree that its ratings are commercial speech.

We reiterate our offer: If AM Best is prepared to produce financial statements sufficient to show the rating division's current and historical financial performance and the division's role in AM Best's overall financial performance, both currently and historically, then we would be willing to forego testimony on AM Best's financials.

However, if AM Best remains unwilling to produce its financial statements then its designated witness on this topic must be prepared to discuss the financial significance of AM Best's ratings to the company.  And if AM Best remains unwilling to prepare the witness accordingly, we will again consider ourselves at an impasse on this topic and seek appropriate relief from the Court on Tuesday.

Best,
Josh

**From:** Steckman, Britt <britt.steckman@bracewell.com>
**Sent:** Saturday, June 8, 2024 9:32 PM
**To:** Bloom, Josh <jbloom@mololamken.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Josh:

We agree with your proposals on Topics 3 and 11.

Regarding Topic 2, we understood Plaintiffs to be interested in the portions of the AM Best's policies, procedures, and methodologies that are at issue in Plaintiffs' complaint, not the entirety of those documents. We also understood those areas to be identified in Topic 2. We objected to Topic 2 as overly broad to the extent it went beyond the areas at issue in this case, and agreed to offer a witness subject to that objection. As you know from AM Best's document production, the policies, procedures, and methodologies that are applicable to the Credit Rating Action run hundreds of pages, including highly technical methodology documents. We cannot reasonably prepare a witness to testify on these broad documents, including regarding areas that we do not understand to be at issue in this case, in the short period of time we have available. If there are specific portions of these documents on which you seek corporate witness testimony that are not identified in the Topic, please identify them, and we will prepare our witness accordingly.

Regarding Topic 8, as a further compromise, we can offer a witness to testify about "the extent to which AM Best uses its credit ratings as or in conjunction with advertising," along with the stipulation we previously offered. We will not offer a witness to testify about the details of AM Best's income or produce financial statements. The case law you cite does not offer any support for Plaintiffs' argument that the details of AM Best's sensitive and confidential financial information would be any more relevant than the proposed stipulation that AM Best earns income from publishing credit ratings.

_____

**BRITT STECKMAN**
Partner
britt.steckman@bracewell.com | download v-card
T: +1.202.828.5831 | F: +1.800.404.3970 | M: +1.703.405.7192

**BRACEWELL LLP**
2001 M Street NW, Suite 900 | Washington, D.C. | 20036-3310
bracewell.com  |  profile  |  LinkedIn  |  Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Bloom, Josh <jbloom@mololamken.com>
**Sent:** Saturday, June 8, 2024 5:27 PM
**To:** Steckman, Britt <britt.steckman@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** [EXTERNAL SENDER] RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Britt,

With respect to the following topics that we still consider in dispute (Topics 2, 3, 8 and 11):

Topic 2
Your new position that Mr. Easop will be designated to testify regarding only the explicitly non-exclusive list of policies and procedures identified in Topic 2(a) is a disappointing surprise.  Until now AM Best never indicated – not in its R&Os, not in its designations, and not during our meet and confer – that its designee on 2(a) would only be prepared on something less than what the topic calls for: "Your policies and procedures applicable to the Credit Rating Action."  As you correctly recognize in your R&Os, "policies and procedures" should be interpreted "broadly to include AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies," which AM Best identified in response to Plaintiffs' Interrogatory No. 1.  Plaintiffs' core claims are that AM Best failed to adhere to its policies and procedures.  Your proposed limitation is unacceptable.  Mr. Easop must be prepared to testify regarding the relevant policies and procedures AM Best has identified, both in its interrogatory responses and its document production (*See, e.g.,* AMBRS-00000379).  To the extent AM Best does not believe one or more of those policies relate to the Credit Rating Action, Mr. Easop can of course testify accordingly at his deposition.

Topic 3
We disagree with your characterization of our proposal.  As stated, the offer to limit the topic from January 2020 to July 2023 was based on the mistaken assumption there was an annual rating in 2020, and that it would cover 3 rating actions.  Given there was no rating in 2020, there is no meaningful difference between proposing December 11, 2019 and January 2020 as a start date.

We also disagree there is insufficient time to prepare a witness about "multiple credit rating actions."  Indeed, in response to our 2020 proposal during the meet and confer, AM Best offered to compromise with a 2021 start date.  We assume that such proposal was made in good faith and included both the January 2021 rating and August 2022 ratings, (*i.e.,* multiple credit rating actions), and was not the functional equivalent of your position in your R&Os which only covered the August 2022 rating.

And we disagree with your completely new position that AM Best should not have to prepare a corporate representative on a topic it believes Plaintiffs "have adequate information about."  We are not aware of any basis for that position.  Whether AM Best has a shared or different understanding of Plaintiffs' view of the parties' past practices, including their level of engagement, is directly relevant to the breach of contract claims at issue in this case.  That is particularly true of the AM Best/Sentinel relationship, which AM Best argued in its opposition to Plaintiffs' TRO motion reflects "a clear course of performance."

5

Nevertheless, as a compromise we propose the following: (1) For the December 2019, January 2021, and August 2022 rating actions, the witness will be prepared to address only those portions of the topic relating to "calculation of a global BCAR and reliance on materials provided by the ACAP Insurers and other third parties;" and (2) The witness will also be prepared to testify about any disagreement AM Best has with any of the descriptions of the parties' pre-July 2023 engagement contained in either the Verified Complaint or Kenneth King's Declaration.

<u>Topic 8</u>
AM Best has not articulated any legitimate relevance objection to this topic.  AM Best has taken the position its rating is protected speech and that we must demonstrate actual malice.  We are entitled to challenge those assertions, including by demonstrating that AM Best's rating is commercial speech.

The Third Circuit has "recognized three factors that aid the inquiry into whether speech is commercial: (1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech?"  *Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020).  This topic, which seeks information regarding the extent to which AM Best uses its credit ratings as or in conjunction with advertising and the existence and extent of its economic motivations for publishing the ratings, addresses those factors.  For example, this topic includes details about the income AM Best earns from ratings.  Those details, such as how important rating-related income is to AM Best's overall financial condition, speak directly to AM Best's economic motivation for its ratings making them directly relevant to the commercial speech inquiry.  The topic also covers the way that AM Best markets its ratings, including whether it perceives (and is motivated by the use of) its ratings as marketing for its services.  That goes directly to whether AM Best's rating are advertisements, which is also directly relevant to the commercial speech issue.  And the Third Circuit has recognized that reputation effects, which the topic also covers, can also qualify as an economic motivation.  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008).

In contrast, AM Best's proposed stipulation is insufficient.  It only partially addresses one of the relevant commercial speech factors.  The fact that AM Best earns money from ratings is not enough; as noted, the details will reveal how important it is to AM Best, which goes directly to its economic motivation.  Mr. Easop's testimony on a different topic regarding a different aspect of AM Best's First Amendment defense is of the same effect: it does not sufficiently address the relevant factors.

If AM Best intends to continue pressing its First Amendment defense it must designate a witness on this topic.  However, if AM Best is prepared to produce financial statements sufficient to show the rating division's current and historical financial performance and the division's role in AM Best's overall financial performance, both currently and historically, then we would be willing to discuss ways in which this topic might be limited.

<u>Topic 11</u>
We agree that this topic can be limited to an appropriate date range.  However, February 23, 2024 to April 22, 2024 is too narrow as it fails to account for relevant information AM Best knew in advance of the Credit Rating Action but failed to consider.  We would propose a range of January 1, 2024 to April 22, 2024 to account for meetings or communications that preceded, but were in reasonable proximity to, the Credit Rating Action.

Best,
Josh

---

**From:** Steckman, Britt <britt.steckman@bracewell.com>
**Sent:** Friday, June 7, 2024 5:27 PM
**To:** Bloom, Josh <jbloom@mololamken.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Josh: Please see our responses to each topic.

1. Topic 2
    a. We understand that your interpretation of "policies and procedures" includes the policies and procedures you identified in response to Plaintiffs' Interrogatory No. 1.
    b. <u>Response</u>: To be clear, we will designate Mr. Easop to testify regarding the portions of the AM Best Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies that are relevant to areas identified in Topic 2(a), i.e., AM Best's code of conduct; Global BCAR; rotation or transition of analyst teams for rated entities; AM Best's appeal process; "under review" and or "watch" status for rated entities; and "event-driven" ratings.  We agree that these documents were identified in the response to Plaintiffs' Interrogatory No. 1.

2. Topic 3
    a. To reduce the burden of preparing for this topic, we proposed limiting this topic to January 1, 2020 to July 1, 2023.  That proposal was made on the mistaken assumption that there was a rating action in 2020.  There was, however, a rating action on December 11, 2019.  AMBRS-00000380.  We would therefore propose limiting this topic to December 11, 2019 to July 1, 2023.  That would cover three rating actions before July 1, 2023.  We believe three rating actions is a reasonable number given the decade-plus length of the parties' relationship and the parties' disagreement as to when the analyst team switched over.  For that reason, we do not agree with the date range you offered in your designations of July 2021 to July 2023.
    b. <u>Response</u>: This scope is overly broad and unduly burdensome.  We simply do not have time to prepare a 30(b)(6) witness to testify about multiple credit rating actions going back over four years, which is *longer* than the time period you asked for on yesterday's call.  As a compromise, we would propose limiting the scope of the topic to cover only "calculation of a global BCAR and reliance on materials provided by the ACAP Insurers and other third parties" going back to the December 2019 credit rating action, as your client should have adequate information about its engagement with AM Best without AM Best having to prepare a corporate witness on that topic.

3. Topic 4
    a. We can accept your interpretation of the topic with the additional highlighted language: "as pertaining to its knowledge and understanding of 777 Re's financial condition as it pertains to the Credit Rating Action, as defined in the Notice of Deposition, and **AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies**."
    b. <u>Response</u>: Agreed.

4. Topic 5
    a. We understand that the designee will be prepared to identify the "affiliates that AM Best reviewed in connection with the Credit Rating Action."
    b. <u>Response</u>: Agreed.

5. Topic 6
    a. We can accept your interpretation of the topic with the additional highlighted language: "as pertaining to its knowledge and understanding of 777 Re's financial condition as it pertains to the Credit Rating Action, as defined in the Notice of Deposition, and **AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies**."
    b. <u>Response</u>: Agreed.

6. Topic 7
    a. Nothing further on this topic.

7. Topic 8
    a. As discussed, we believe this topic is directly relevant to the nature of AM Best's purported speech in this case.
    b. The parties also discussed the possibility of a stipulation in lieu of (or in lieu of part of) this topic.  If you would like to propose a stipulation, we are happy to consider it.  Please note that any

stipulation will need to include detailed financial information about the role of credit ratings in AM Best's financial condition.

    c. Also note that agreement on a stipulation would need to be reached no later than Sunday, June 9, 2024 for us to withdraw this topic.

    d. <u>Response</u>: While AM Best does not agree that its financial information is relevant to this dispute or AM Best's First Amendment defenses, AM Best will stipulate that it charges fees for, and earns income from, credit ratings.  Even if the fact of AM Best's income from credit ratings was relevant, you have not explained how details of that income would be relevant. I do note that Mr. Easop will be prepared to testify in response to Topic 7 about the various publications that AM Best issues, to the extent that is relevant to your interest in business model.

8. Topic 9

    a. As discussed, we believe this topic is plainly relevant given the Court's ruling that Plaintiffs' Request for Production No. 6 is relevant.

    b. We are prepared to modify this topic as highlighted below:

        i. **Your knowledge and understanding of** the consequences to the A-CAP Insurers if you release the final rating you determined in connection with the Credit Rating Action.

    c. That appears to be consistent with what you've stated in your designations, but let us know if you disagree.

    d. <u>Response</u>: Agreed.

9. Topic 10

    a. Nothing further on this topic.

10. Topic 11

    a. We note in your designations your proposal to limit this topic "to the extent to which AM Best considered any information learned from any such communication or meetings in connection with the Credit Rating Action."  We do not believe that is sufficiently broad, as it does not appear to cover information AM Best may have learned that was relevant the Credit Rating Action and should have considered but failed to.

    b. We would instead propose the following highlighted language to limit this topic:

        i. "Any communication or meeting between You, on one hand, and 777 Re, Leadenhall, or the United States Securities and Exchange Commission, on the other hand, concerning the A-CAP Insurers or their affiliates **relating to the Credit Rating Action.**

    c. <u>Response</u>**:** We agree if the topic has the date range that we agreed to with respect to AM Best's email searches, i.e., "Any communication or meeting ==between February 23, 2024 and April 22, 2024== between You, on one hand, and 777 Re, Leadenhall, or the United States Securities and Exchange Commission, on the other hand, concerning the A-CAP Insurers or their affiliates relating to the Credit Rating Action."  That would appear to address your concern about "information that AM Best may have learned and should have considered" in the Credit Rating Action.

**BRITT STECKMAN**
Partner
<u>britt.steckman@bracewell.com</u> | download v-card
T: +1.202.828.5831 | F: +1.800.404.3970 | M: +1.703.405.7192

**BRACEWELL LLP**
2001 M Street NW, Suite 900 | Washington, D.C. | 20036-3310
<u>bracewell.com</u>  |  <u>profile</u>  |  <u>LinkedIn</u>  |  <u>Twitter</u>

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Bloom, Josh <jbloom@mololamken.com>
**Sent:** Friday, June 7, 2024 12:30 PM
**To:** Steckman, Britt <britt.steckman@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** [EXTERNAL SENDER] RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

All,

Thank you for your time on the meet and confer and providing witness designations.  Here is our understanding of where things stand/our proposals for moving unresolved matters forward:

1. Topic 1
   a. Noting further on this topic.
2. Topic 2
   a. We understand that your interpretation of "policies and procedures" includes the policies and procedures you identified in response to Plaintiffs' Interrogatory No. 1.
3. Topic 3
   a. To reduce the burden of preparing for this topic, we proposed limiting this topic to January 1, 2020 to July 1, 2023.  That proposal was made on the mistaken assumption that there was a rating action in 2020.  There was, however, a rating action on December 11, 2019.  AMBRS-00000380.  We would therefore propose limiting this topic to December 11, 2019 to July 1, 2023.  That would cover three rating actions before July 1, 2023.  We believe three rating actions is a reasonable number given the decade-plus length of the parties' relationship and the parties' disagreement as to when the analyst team switched over.  For that reason, we do not agree with the date range you offered in your designations of July 2021 to July 2023.
4. Topic 4
   a. We can accept your interpretation of the topic with the additional highlighted language: "as pertaining to its knowledge and understanding of 777 Re's financial condition as it pertains to the Credit Rating Action, as defined in the Notice of Deposition, and ==AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies==."
5. Topic 5
   a. We understand that the designee will be prepared to identify the "affiliates that AM Best reviewed in connection with the Credit Rating Action."
6. Topic 6
   a. We can accept your interpretation of the topic with the additional highlighted language: "as pertaining to its knowledge and understanding of 777 Re's financial condition as it pertains to the Credit Rating Action, as defined in the Notice of Deposition, and ==AM Best's Methodology & Criteria Procedures, CRPC Policies & Procedures, and compliance policies==."
7. Topic 7
   a. Nothing further on this topic.
8. Topic 8
   a. As discussed, we believe this topic is directly relevant to the nature of AM Best's purported speech in this case.
   b. The parties also discussed the possibility of a stipulation in lieu of (or in lieu of part of) this topic.  If you would like to propose a stipulation, we are happy to consider it.  Please note that any

stipulation will need to include detailed financial information about the role of credit ratings in AM Best's financial condition.

    c. Also note that agreement on a stipulation would need to be reached no later than Sunday, June 9, 2024 for us to withdraw this topic.

9. Topic 9

    a. As discussed, we believe this topic is plainly relevant given the Court's ruling that Plaintiffs' Request for Production No. 6 is relevant.

    b. We are prepared to modify this topic as highlighted below:

        i. **Your knowledge and understanding of** the consequences to the A-CAP Insurers if you release the final rating you determined in connection with the Credit Rating Action.

    c. That appears to be consistent with what you've stated in your designations, but let us know if you disagree.

10. Topic 10

    a. Nothing further on this topic.

11. Topic 11

    a. We note in your designations your proposal to limit this topic "to the extent to which AM Best considered any information learned from any such communication or meetings in connection with the Credit Rating Action." We do not believe that is sufficiently broad, as it does not appear to cover information AM Best may have learned that was relevant the Credit Rating Action and should have considered but failed to.

    b. We would instead propose the following highlighted language to limit this topic:

        i. "Any communication or meeting between You, on one hand, and 777 Re, Leadenhall, or the United States Securities and Exchange Commission, on the other hand, concerning the A-CAP Insurers or their affiliates **relating to the Credit Rating Action**.

Best,
Josh

---

**From:** Steckman, Britt <britt.steckman@bracewell.com>
**Sent:** Friday, June 7, 2024 11:38 AM
**To:** Bloom, Josh <jbloom@mololamken.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Josh et al: Please see AM Best's designations attached.

---

**BRITT STECKMAN**
Partner
britt.steckman@bracewell.com | download v-card
T: +1.202.828.5831 | F: +1.800.404.3970 | M: +1.703.405.7192

**BRACEWELL LLP**
2001 M Street NW, Suite 900 | Washington, D.C. | 20036-3310
bracewell.com | profile | LinkedIn | Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Bloom, Josh <jbloom@mololamken.com>
**Sent:** Thursday, June 6, 2024 2:30 PM
**To:** Steckman, Britt <britt.steckman@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** [EXTERNAL SENDER] RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Thanks, Britt. We are available at 4:30.  If that works on your end, I can circulate a dial-in.

Best,
Josh

---

**From:** Steckman, Britt <britt.steckman@bracewell.com>
**Sent:** Thursday, June 6, 2024 11:55 AM
**To:** Bloom, Josh <jbloom@mololamken.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Counsel: Please see attached AM Best's responses and objections to the 30(b)(6) notice.  Please let us know when you are available to meet and confer.  We are available this afternoon.

**BRITT STECKMAN**
Partner
britt.steckman@bracewell.com | download v-card
T: +1.202.828.5831 | F: +1.800.404.3970 | M: +1.703.405.7192

**BRACEWELL LLP**
2001 M Street NW, Suite 900 | Washington, D.C. | 20036-3310
bracewell.com  |  profile  |  LinkedIn  |  Twitter

CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Bloom, Josh <jbloom@mololamken.com>
**Sent:** Tuesday, June 4, 2024 6:16 PM
**To:** Steckman, Britt <britt.steckman@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** [EXTERNAL SENDER] RE: Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

All,

Attached please find Plaintiffs' updated notice of deposition for A.M. Best's corporate representative.

Best,
Josh

**From:** Bloom, Josh
**Sent:** Monday, May 20, 2024 11:14 AM
**To:** Britt Steckman <britt.steckman@bracewell.com>; Maxwell, Rita <rita.maxwell@bracewell.com>; Morley, Patrick <patrick.morley@bracewell.com>
**Cc:** Joseph Linares <JLinares@walsh.law>; A-CAP ML <A-CAPML@mololamken.com>
**Subject:** Atlantic Coast Life Insurance v. A.M. Best -- 3:24-cv-05470 (DNJ): 30(b)(6) Deposition Notice

Britt,

By way of service, attached please find Plaintiffs' notice of deposition for A.M. Best's corporate representative.  Please note that the attached is being sent in the interest of time given the hearing schedule, and remains subject to further amendment based on, among other things, Judge Quraishi's ruling on the parties' discovery dispute and additional information learned during expedited discovery.

We will revert with a hearing witness list later today.

Please advise as to times you are available to meet and confer tomorrow to begin discussing hearing and deposition logistics and, if necessary, the attached deposition topics.

Best,
Josh

This e-mail may contain attorney work product, privileged and/or confidential information. It is intended to be subject to the Attorney Client privilege. It is intended only for the original recipients, and no other person is authorized to receive it. Please do not copy or forward this e-mail without the consent of the author. If you have received this e-mail in error please delete it immediately from your system and contact the author. Molo Lamken LLP is a limited liability partnership formed under the laws of New York and the liability of its partners is limited accordingly. The names Molo Lamken and MoloLamken shall refer to Molo Lamken LLP.

This email has been scanned for viruses and malware.